IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| SAFA H., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL,[1] <br> **Commissioner of Social Security,** <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:19-cv-00387-JCB <br><br> Magistrate Judge Jared C. Bennett |

The parties in this case consented to have a United States Magistrate Judge conduct all proceedings, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[2] 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Before the court is Safa H.'s ("Plaintiff") appeal of Defendant Andrew M. Saul's ("Commissioner") final decision determining that Plaintiff was not entitled to Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. 42 U.S.C. §§ 1381-1383f. The court heard oral argument on August 27, 2020.[3] Michael E. Bulson appeared on behalf of Plaintiff, and David I. Blower

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), Andrew M. Saul has been substituted for Acting Commissioner Nancy A. Berryhill as the Defendant in this action. ECF No. 4.

[2] ECF No. 13.

[3] ECF No. 28.

appeared on behalf of the Commissioner. At the conclusion of the hearing, the court took the matter under advisement. After careful consideration of the entire record, the parties' briefs, and arguments presented by counsel at the hearing, the Commissioner's decision is reversed and remanded for the reasons set forth below.

**PROCEDURAL BACKGROUND**

Plaintiff alleges disability due to various physical impairments. On September 29, 2015,[4] Plaintiff filed a protective application for SSI, alleging disability beginning on December 1, 2014.[5] Plaintiff's application was denied initially and upon reconsideration.[6] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on April 12, 2018.[7] On May 17, 2018, the ALJ issued a written decision denying Plaintiff's claim for SSI.[8]

On April 12, 2019, the Appeals Council denied Plaintiff's request for review,[9] making the ALJ's decision final for purposes of judicial review. 42 U.S.C. § 405(g); 20 C.F.R.

---

[4] The claim in this case was filed before March 27, 2017. Therefore, the court will review the ALJ's decision under the old rules codified at 20 C.F.R. §§ 416.904, 416.927. SSR 17-2p, 82 F.R. 15263-02 March 27, 2017); *see also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, at *5852-57 (Jan. 18, 2017).

[5] ECF No. 9, Administrative Record ("AR ___") at 168.

[6] AR at 103-09.

[7] AR at 45-77.

[8] AR at 26-38.

[9] AR at 1-6.

§ 416.1481. On June 13, 2019, Plaintiff filed her complaint in this case seeking review of the Commissioner's final decision.[10]

## STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted). The Commissioner's findings, "if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (quotations and citation omitted). "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]." *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted). "The [f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotations and citation omitted) (first alteration in original).

The aforementioned standards of review apply to the ALJ's five-step evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 416.920(a)(4)(i)-(v); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process). If a

---

[10] ECF No. 3.

determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed. 20 C.F.R. § 416.920(a)(4).

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If [the claimant] is, disability benefits are denied. If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that [her] impairments would have more than a minimal effect on [her] ability to do basic work activities, [she] is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.
>
> . . . .
>
> Step three determines whether the impairment is equivalent to one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity . . . . If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . .

*Williams*, 844 F.2d at 750-51 (quotations and citations omitted); *see* 20 C.F.R. § 416.920(a)(4)(i)-(iii).

At the fourth step, the claimant must show, given her residual functional capacity ("RFC"), that the impairment prevents performance of her "past relevant work." 20 C.F.R. § 416.920(a)(4)(iv). "If the claimant is able to perform [her] previous work, [she] is not disabled." *Williams*, 844 F.2d at 751. If, however, the claimant is not able to perform her previous work, she "has met [her] burden of proof, establishing a prima facie case of disability." *Id.*

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step." *Id.* At this step, the burden of proof shifts to the Commissioner, and the decision maker must determine

4

"whether the claimant has the [RFC] to perform other work in the national economy in view of [her] age, education, and work experience." *Id*. (quotations and citation omitted); *see* 20 C.F.R. § 416.920(a)(4)(v). If it is determined that the claimant "can make an adjustment to other work," she is not disabled. 20 C.F.R. § 416.920(a)(4)(v). If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," she is disabled and entitled to benefits. *Id*.

## ANALYSIS

In support of her claim that the Commissioner's decision should be reversed, Plaintiff argues that the ALJ erred: (1) by failing to include illiteracy limitations in Plaintiff's RFC and the hypothetical posed to the vocational expert ("VE"); (2) by failing to find that Plaintiff's impairments met or were equivalent to a Listed Impairment; (3) in his treatment and evaluation of certain medical opinions and evidence; (4) by expressing bias against women considering pregnancy, which denied Plaintiff of due process. The court addresses each argument is turn below. Based upon the following analysis, the court concludes that although Plaintiff's final three arguments are without merit, her first two arguments require reversal and remand.

**I.     The ALJ Erred by Failing to Include the Illiteracy Limitation in Plaintiff's RFC and the Hypothetical Posed to the VE.**

Notwithstanding the ALJ's finding that Plaintiff is illiterate in English, the ALJ did not include this functional limitation in the hypothetical posed to the VE. Plaintiff contends that the ALJ erred in this regard. The court agrees.

In formulating a claimant's RFC, the ALJ must account for all medical and vocational limitations resulting from the claimant's impairments. *Coleman v. Barnhart*, 92 F. App'x 454, 456 (9th Cir. Feb. 23, 2004); *see also* 20 C.F.R. § 416.945(a)(2) (providing that the ALJ must

5

"consider all of [a claimant's] medically determinable impairments . . . , including [the claimant's] medically determinable impairments that are not 'severe,'" when assessing the claimant's RFC); SSR 96-8p, 1996 WL 374184 (July 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). Additionally, the Tenth Circuit has long held that when an ALJ poses hypothetical questions to a VE, those questions must "relate with precision all of a claimant's impairments." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (quotations and citation omitted).

Although illiteracy is not part of the RFC determination, it is a vocational limitation. *Odoms v. Colvin*, 194 F.Supp.3d 415, 425 (W.D.N.C. 2016) ("Illiteracy . . . is considered a vocational factor, and, thus does not appropriately belong in the RFC."); *Brindley v. Astrue*, No. 2:10CV775, 2011 WL 1326914, *3 (D. Utah April 7, 2011) ("Illiteracy is not a factor that is considered in assessing an individual's [RFC]."). Here, the ALJ determined that Plaintiff "is not able to communicate in English and is considered . . . illiterate."[11] Despite so finding, the ALJ's lone hypothetical to the VE posited:

> [P]lease assume an individual who can occasionally lift or carry 20 pounds. Frequently lift or carry ten pounds. Stand or walk with normal breaks about six hours in an eight-hour day. Sit with normal breaks about six hours in an eight-hour day. Frequently climb ramps and stairs. Occasionally climb ladders, ropes, and scaffolds. Frequently balance, stoop, kneel, can crouch. Occasionally crawl. Avoid concentrated exposure to cold, extreme heat, vibrations, and hazards. No public contact and only occasional contact with supervisors and coworkers.[12]

---

[11] AR at 37.

[12] AR at 70-71.

6

Conspicuously absent from this hypothetical are any limitations regarding illiteracy and language. In fact, there is no discussion at between the ALJ and the VE about Plaintiff's education or literacy. This lack of precision in the RFC and the hypothetical to the VE is reversable error. *See, e.g.*, *Leffingwell v. Colvin*, No. 1:15CV00015, 2016 WL 890552, at *6 (S.D. Ind. Mar. 9, 2016) ("Because the ALJ never mentioned Leffingwell's illiteracy, despite proposing three different hypotheticals to the VE, the ALJ's hypotheticals cannot be said to have 'orient [ed] the VE to the totality of [Leffingwell's] limitations.'" (citations omitted)).

Nevertheless, the Commissioner contends that the ALJ did not err because illiteracy is the least important vocational factor in determining jobs available in the national economy and that illiterate workers are still capable of performing many of the lower-level jobs.[13] Although the court fully agrees with the Commissioner's assertion that illiteracy, by itself, cannot a disability make, the problem with this argument is that it misses Plaintiff's point. Courts have long required an ALJ to posit hypotheticals to the VE that encompass all of the medical and vocational limitations to which the ALJ finds the claimant is subject or have in the record a discussion that shows a reviewing court that the established limitations were considered in the VE's opinion regarding available jobs in the national economy for the individual claimant. *Sullivan*, 945 F.2d at 1492; *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010) ("We sometimes have assumed a VE's familiarity with a claimant's limitations, despite any gaps in the hypothetical, when the record shows that the VE independently reviewed the medical record or heard testimony directly addressing those limitations. . . . Here, there is absolutely no discussion

---

[13] ECF No. 21 at 17-18.

7

in the record between the ALJ and the VE that demonstrates such consideration."). Because the record here falls short of this requirement, this court must remand this matter to the Commissioner for further consideration.[14]

## II. The ALJ Did Not Err in Finding Plaintiff's Impairments Do Not Meet or Equal a Listed Impairment.

Plaintiff argues that the ALJ erred at the step three analysis by finding her impairment did not meet or equal a Listed Impairment. As indicated above, step three "determines whether the impairment is equivalent to one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (quotations and citations omitted). The Listings, found at 20 C.F.R. Pt. 404, Subpt. P, App. 1, "define impairments that would prevent an adult, regardless of h[er] age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "[T]he listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.*

---

[14] Additionally, because there appears to be no consideration of the impacts of Plaintiff's illiteracy on her ability to work at the jobs that the VE found available, the ALJ also failed to resolve the conflict between the qualifications that the purportedly available jobs required and Plaintiff's ability to satisfy them. *See, e.g., Preciado v. Colvin*, No. CIV-14-0006-HE, 2015 WL 1508917, at *5 (W.D. Okla. Mar. 31, 2015) (reversing for "clear conflict between being unable to read and write in English . . . and being able to perform a job that requires significant reading and writing such as [cashier, rental clerk, and parking lot attendant] jobs do"); *Beloborody v. Colvin,* No. 11–cv–00797–PAB, 2013 WL 5366860, at *5 (D. Colo. Sept. 25, 2013) (reversing where substantial evidence did not support ALJ's decision that plaintiff with limited ability to communicate in English could perform jobs identified by VE with language levels of 1 and 2 when ALJ did not provide reasonable explanation for the conflict); *Nail v. Colvin,* No. CIV–12–65–SPS, 2013 WL 955023, at *3-4 (E.D. Okla. Mar. 12, 2013) (remanding for unresolved conflicts between VE testimony and the DOT when, among other conflicts, ALJ did not reconcile plaintiff's illiteracy with jobs requiring reading levels of at least 2). Resolving this apparent conflict will necessarily be addressed on remand using the proper hypotheticals.

At step three, a claimant has the "burden to present evidence establishing her impairments meet or equal listed impairments." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). To satisfy this burden, a claimant must show that her impairment "meet[s] all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530. A claimant can also qualify for benefits "by showing that h[er] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment," but only if she "present[s] medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* at 531. "To show that an impairment or combination of impairments meets the requirements of a listing, a claimant must provide specific medical findings that support each of the various requisite criteria for the impairment." *Lax*, 489 F.3d at 1085; 20 C.F.R. § 416.925.

Plaintiff avers that the ALJ erred (A) in finding that Plaintiff's bullous pemphigoid diagnosis was not equal in severity to Listing 8.03; and (B) in finding that the combination of her impairments was not medically equivalent to Listing 8.03. The court addresses both arguments in turn and concludes that they fail.

    A.    <u>Bullous Pemphigoid</u>

The ALJ correctly found that Plaintiff's bullous pemphigoid skin condition did not qualify as Listing 8.03 because her bullous pemphigoid did not meet all the specified medical criteria.

Listing 8.03 states:

> Bullous disease: [] pemphigus, erythema multiforme bullosum, epidermolysis bullosa, bullous pemphigoid, dermatitis herpetiformis[], with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed.

9

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 8.03; *see also* 20 C.F.R. §§ 416.920, 416.925.

Specifically, Listing 8.03 requires extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed. Additionally, the regulations define extensive skin lesions as follows:

> Extensive skin lesions are those that involve multiple body sites or critical body areas, and result in a very serious limitation. Examples of extensive skin lesions that result in a very serious limitation include but are not limited to:
>
> a. Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.
>
> b. Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.
>
> c. Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 8.00; *see also* 20 C.F.R. §§ 416.920, 416.925. A claimant's impairment does not meet or equal a Listing merely because a claimant has a diagnosis identified in a Listing. Soc. Sec. Law & Prac. ("SSLP") § 42:8. To qualify as a Listing, the impairment must be medically determinable and satisfy all the criteria in the listing. *Id*.

Although the ALJ found that Plaintiff had a severe impairment of bullous pemphigoid, the ALJ concluded that her impairment does not meet or equal Listing 8.03.[15] The ALJ made this finding because the record does not show Plaintiff's skin lesions persisted for the required

---

[15] AR at 32-33.

duration.[16] The ALJ explained that "[p]hysical exams have not observed extensive skin lesions for at least three months despite continuing treatment."[17] Plaintiff disputes this finding and posits that the record contains evidence "close" to meeting the duration requirement.[18] However, "close" is not the metric. Listing regulations are "rigidly applied,"[19] and "an impairment that manifests in only some of those criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530. Therefore, because the record does not establish skin lesions persisting for at least three months despite continuing treatment as prescribed, the ALJ correctly found Plaintiff's impairment did not meet or equal Listing 8.03.

Moreover, even assuming *arguendo*, that close was good enough, Plaintiff's skin lesions do not qualify as extensive. As noted above, "extensive" skin lesions are defined as those that involve multiple body sites or critical body areas and result in a very serious limitation. Plaintiff's lesions do not involve critical body areas (such as joints in multiple extremities, the palms of both hands, or the soles of both feet), and they do not result in a very serious limitation in moving or walking. Rather, the records shows Plaintiff has occasional lesions and blisters on her legs, breasts, back, and abdomen that result in mild irritation and respond well to treatment.[20]

---

[16] AR at 33.

[17] *Id*.

[18] ECF No. 17 at 5.

[19] SSLP § 42:8 (explaining that "[t]he policy is applied so rigidly that a failure to meet even a single criterion by a narrow margin results in a finding that the listed impairment is not met, without regard to the extent to which other criteria are exceeded." (citing *Zebley*, 493 U.S. at 530)).

[20] AR at 316, 338, 348, 361, 640, 652–740.

11

Lastly, the evidence in the record does not show the prednisone side-effects from Plaintiff's bullous pemphigoid treatment regimen compare in severity or duration to establish medical equivalence to Listing 8.03.

### B.     Combination of Impairments

The ALJ also correctly found that Plaintiff's combination of impairments—i.e., bullous pemphigoid, diabetes type II, drug-induced osteoporosis, cushings disease, and hypertension—do not medically equal Listing 8.03. Plaintiff argues the medical opinions of her treating physicians, Dr. Pehrson and Dr. Belnap, show that this combination of impairments is medically equivalent to Listing 8.03. This argument fails for three reasons. First, the mere accumulation of a number of impairments does not establish medical equivalence.[21] Second, neither Dr. Pehrson nor Dr. Belnap identify specific medical findings equal in severity to every criterion in Listing 8.03.[22] *Zebley*, 493 U.S. at 531. And third, as discussed below, the ALJ properly assigned little weight to Dr. Pehrson's and Dr. Belnap's medical opinions, and therefore their medical opinions are not entitled to special significance.[23]

---

[21] SSLP § 42:9.

[22] ECF No. 17 at 6-7.

[23] To the extent Plaintiff argues the ALJ did not adequately explain his reasoning for finding no medical equivalence, that argument too fails. The ALJ evaluates Plaintiff's impairments throughout the decision and expressly states that the medical experts did not conclude the combination of impairments met or equaled a Listing. This analysis is consistent with both Social Security policy and case law. SSR 17-2p, 2017 WL 3928306, at *4 (Mar. 27, 2017) (explaining ALJ is not required to obtain evidence from medical experts prior to finding that impairments do not medically equal a listed impairment); *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (holding ALJ's statement that impairments did not medically equal a listing paired with fact discussion throughout decision was sufficient to support determination); *see also Prince v. Comm'r, Soc. Sec. Admin.*, 554 Fed. App'x. 967, 969 (11th Cir. 2014) (holding that an ALJ's finding as to whether a claimant does or does not meet a listing may be implied from the record

**III.     The ALJ Did Not Err in His Treatment of Medical Opinions and Evidence.**

With respect to the medical opinions and evidence, Plaintiff first argues that (A) the ALJ erred in his treatment of Plaintiff's treating physicians' medical opinions. Plaintiff next argues that (B) the ALJ erred by failing to consider the favorable Medicaid decision. The court considers each argument in turn below and concludes they are without merit.

A.     Medical Opinions

A review of the ALJ's decision shows that he properly considered the relevant factors required under the treating physician rule. This rule provides that "[a] treating physician's opinion must be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Knight ex rel. P.K. v. Colvin,* 756 F.3d 1171, 1176 (10th Cir. 2014). If an opinion is not entitled to controlling weight, the ALJ must still determine what weight, if any, to assign to the opinion by considering the factors set forth at 20 C.F.R. § 416.927. *Id.* at 1176-77. The ALJ must give good reasons for the weight he assigns to the opinion, and specific, legitimate reasons if he rejects the opinion completely. *Watkins v. Barnhart,* 350 F.3d 1297, 1301 (10th Cir. 2003). Although the ALJ need not explicitly discuss each factor, *Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007), the reasons stated must be "sufficiently specific" to permit meaningful appellate review. *Watkins,* 350 F.3d at 1300.

In this case, the ALJ relied upon proper factors to support the conclusion that Dr. Pehrson's and Dr. Belnap's medical opinions were entitled to little weight. The ALJ properly

---

and that an ALJ does not have to "mechanically recite" the evidence leading to her listing determination) (citation omitted)).

13

relied upon the fact that the medical opinions were not supported by and were inconsistent with the objective medical evidence in the record.[24] 20 C.F.R. § 416.927(c)(3)-(4); *Jones v. Colvin*, 610 F. App'x 755, 759 (10th Cir. 2015). Specifically, the ALJ noted both Dr. Pehrson's and Dr. Belnap's opinions "did not account for [Plaintiff's] noncompliance with prescribed treatment" and were "inconsistent with treatment records with normal physical exams and reflecting good control of her symptoms while taking medication."[25] The ALJ also properly relied upon the fact that Dr. Pehrson's and Dr. Belnap's opinions went to issues reserved to the Commissioner and are not entitled to special significance.[26] 20 C.F.R. § 416.927(d)(1)-(3).

Plaintiff appears to argue that the ALJ's failure to identify the presumption of controlling weight for treating sources means that the ALJ somehow did not give proper deference to those opinions. This argument fails because, as explained above, the ALJ properly followed the requirements for considering and weighing those treating source medical opinions. Because the ALJ addressed the weight given to treating sources, the ALJ did not err.

To the extent that Plaintiff implicitly argues that Dr. Pehrson's and Dr. Belnap's opinions should have been given controlling weight, that argument also fails. The ALJ determined that Dr. Pehrson's and Dr. Belnap's opinions were entitled to "little weight."[27] In doing so, he implicitly determined that those opinions were not entitled to controlling weight. *Mays v. Colvin*, 739 F.3d

---

[24] AR at 36-37.

[25] *Id*.

[26] *Id*.

[27] *Id*.

14

569, 575 (10th Cir. 2014) ("[T]he ALJ implicitly declined to give the opinion controlling weight. Because we can tell from the decision that the ALJ declined to give controlling weight to [the treating source] opinion, we will not reverse on this ground."). Therefore, the argument fails.

Lastly, to the extent that Plaintiff reargues the weight of the evidence before the ALJ on this issue, the court notes that such a tactic is futile on appeal. It is not this court's role to reweigh the evidence before the ALJ. *Madrid*, 447 F.3d at 790. Indeed, it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies. *See, e.g.*, *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000); *Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988). From an evidentiary standpoint, the only issue relevant to the court is whether substantial evidence exists in the record to support the ALJ's conclusions. *Oldham*, 509 F.3d at 1257 (providing that the court reviewing the ALJ's decision reviews "only the sufficiency of the evidence, not its weight" (emphasis omitted)). For these reasons, the court concludes that the ALJ did not err in his treatment of Dr. Pehrson's and Dr. Belnap's opinions.

    B.  <u>Medicaid Decision</u>

Plaintiff next contends that the ALJ erred by failing to acknowledge and consider the favorable Medicaid decision. The court disagrees. Although another agency's determination of disability is not binding on the Social Security Administration, 20 C.F.R. § 416.904, it is evidence that the ALJ must consider and explain why he did not find it persuasive. *Baca v. Dep't of Health & Human Servs.,* 5 F.3d 476, 480 (10th Cir. 1993) ("Although findings by other agencies are not binding on the Secretary, they are entitled to weight and must be considered.")

Here, the ALJ did just that. In the decision, not only does the ALJ acknowledge the Medicaid decision, but he assigns "some weight" to the December 2015 medical opinion presented in Medicaid decision.[28] The ALJ also explains his reasoning for finding the remaining Medicaid evidence unpersuasive.[29] Nothing more is required. *Wilkins v. Callahan*, 127 F.3d 1260, 1262 (10th Cir. 1997) ("It is clear that the agency in this case did recognize and consider the VA's decision, as it is discussed by both the ALJ and the district court. More is not required; no legal error exists."). Accordingly, the ALJ did not err in his treatment of the Medicaid decision.

## IV.  The ALJ Did Not Deny Plaintiff Due Process Based on Bias.

Plaintiff asserts that the ALJ denied her due process due to bias against disabled women who want to become mothers. Although the ALJ expressed skepticism regarding whether suffering from a disability is consistent with the desire to become a mother and engage in the exhausting activity of rearing children, this did not cross the line into a due process violation. To meet her burden to show that the ALJ was so biased as to deprive her due process, Plaintiff must overcome the presumption of that the ALJ was not biased by showing that the ALJ "displayed a deep-seated and unequivocal antagonism that would render fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). The record in this case falls well under such a high hurdle. The ALJ did not come anywhere near manifesting the type of bias required to deprive a litigant of due process. Therefore, Plaintiff's argument fails.

---

[28] AR at 36.

[29] *Id*.

## CONCLUSION AND ORDER

The court concludes that the ALJ erred in the two respects discussed above. Accordingly, IT IS HEREBY ORDERED that the Commissioner's decision in this case is REVERSED and REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 7th day of October 2020.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge